UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALEXIS DELOSSANTOS, | : | |
|     Petitioner, | : | CIVIL CASE NO. |
| | : | 3:13-CV-65 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | JUNE 26, 2013 |
|     Respondent. | : | |

**RULING RE: PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 [Doc. No. 1]**

Petitioner Alexis Delossantos proceeds pursuant to section 2255 of title 28 of the United States Code ("2255") to vacate, set aside, or correct his federal criminal sentence of sixty months imprisonment on each of two counts, to be served concurrently. See Delossantos 2255 Mot. (Doc. No. 1). Delossantos argues that his counsel was ineffective and that this court made a variety of errors in connection with the sentencing. See id. at 4.

The government argues that Delossantos's claims are without merit. First, the government argues that Delossantos's counsel was not constitutionally deficient under Strickland v. Washington, 466 U.S. 668 (1984). Second, the government argues that this court did not err when it sentenced Delossantos. See Gov't's Opp. to Delossantos 2255 Mot. (Doc. No. 5) ("Gov't's Opp.").[1]

**I.   BACKGROUND**

On September 28, 2006, a federal grand jury returned a two-count Indictment

---

[1] Delossantos also filed a supplemental brief, in which he argues for a default judgment against the Government based on Delossantos's failure to timely receive the Government's Opposition. See Delossantos Reply to Gov't's Opp (Doc. No. 14) ("Delossantos Reply") at 1–2. This court previously denied Delossantos's request for a default judgment on these grounds. See Order (Doc. No. 12). The rest of the Reply reiterates Delossantos's ineffective assistance of counsel arguments. See Delossantos Reply at 2–7 (arguing that counsel was ineffective for failure to argue for sentencing reductions based on mitigating role and acceptance of responsibility).

1

charging Delossantos with conspiracy to distribute and to possess with intent to distribute cocaine, in violation of sections 841(a)(1), 841(b)(1)(B)(ii), and 846 of title 21 of the United States Code, and possession with intent to distribute cocaine, in violation of sections 841(a)(1) and 841(b)(1)(B)(ii) of title 21 of the United States Code. See Indictment (Doc. No. 7), United States v. Delossantos, No. 06-cr-264 (JCH). On March 21, 2007, Delossantos pled guilty to both Counts of the Indictment. See Minute Entry for Change of Plea Hearing (Doc. No. 92). At that hearing, this court released Delossantos on a bond, under certain conditions, to permit him "to travel outside the State of Connecticut, but only with the prior approval of the U.S. Attorney . . . and the United States Probation Department." Id. Before his sentencing, this court received a report that Delossantos had violated the conditions of his release by failing to report to the United States Probation Office as directed and by failing to remain in the custody of his wife. See Violation Report (Doc. No. 119), United States v. Delossantos, No. 06-cr-264 (JCH). This court learned that Delossantos had apparently fled to the Dominican Republic, where he remained for almost four years until he was finally located, extradited, and returned to the United States for sentencing.

On May 23, 2011, this court sentenced Delossantos to sixty months of imprisonment and four years of supervised release on each of the two Counts to which he pled guilty, to run concurrently. See Judgment (Doc. No. 172), United States v. Delossantos, No. 06-cr-264 (JCH). Prior to imposing the sentence, the court performed a calculation under the Sentencing Guidelines and determined Delossantos's applicable offense level to be 28—based on a base offense level of 28, a two-level "safety-valve" reduction, and a two-level obstruction of justice enhancement based on Delossantos's

flight prior to sentencing—and his criminal history category to be I.  This level and history category results in a Guidelines sentence range of 78 to 97 months on each Count.  Sentencing Tr. (Doc. No. 184), United States v. Delossantos, No. 06-cr-264 (JCH), at 32–38.

This court then considered whether to depart downward from this figure. Delossantos's attorney, Gary Mastronardi, argued in his sentencing memorandum and at the sentencing hearing for a downward departure.  He argued, among other things, that the court should consider Delossantos's cooperation with the government in sentencing him.  Id. at 41.  The court then determined Delossantos's sentence under the statutory guidelines set forth by Congress in section 3553 of title 18 of the United States Code (including the Sentencing Guidelines) and relevant Second Circuit caselaw. The court took all relevant factors into account and decided upon the sentence ultimately imposed.  The court emphasized the seriousness of the offense and the need to provide adequate deterrence.  Id. at 54–55.  The court noted Delossantos's history and characteristics, including his decision to flee to the Dominican Republic, his cooperation with the government, and his relative lack of criminal history, in assigning him a below-Guidelines, but nonetheless custodial, sentence.  Id. at 55–60.

The court instructed Delossantos of his right to appeal to the Court of Appeals and of the fourteen-day deadline to do so.  Delossantos informed the court that he understood his rights and the deadline.  Id. at 63–64.

## II.    STANDARD OF REVIEW

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that

make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995) (internal citation omitted). "As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal citations and quotation marks omitted). Because Delossantos is proceeding pro se, the court must read his "submissions broadly so as to determine whether they raise any colorable legal claims." Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 145–46 (2d Cir. 2002)).

Section 2255 provides that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." To determine whether Delossantos is entitled to an evidentiary hearing on his Motion, the court looks "primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief." LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005) (quoting Dalli v. United States, 491 F.2d 758, 760 (2d Cir. 1974)). "The petitioner must set forth specific facts which he is in a position to establish by competent evidence." Id. (quoting Dalli, 491 F.2d at 761).

4

## III.   DISCUSSION

### A.   Ineffective Assistance of Counsel

Construing Delossantos' Motion liberally, Delossantos argues that his counsel was ineffective in the following ways:  that he failed to argue for a mitigating role adjustment, that he failed to argue adequately for a downward adjustment for acceptance of responsibility and against an enhancement for obstruction of justice, that he failed to adequately investigate Delossantos's mental condition and family history, and that he did not ensure that Delossantos entered a knowing and voluntary plea.  See Delossantos 2255 Mot. at 5–10.  The government argues that defense counsel did "excellent" work at sentencing and "obtained a remarkably favorable . . . non-Guidelines sentence" for Delossantos, "which was 18 months lower than the bottom of the range recommended by the Office of Probation and 3 months lower than the range would have been had the obstruction enhancement not been assessed."  Gov't's Opp. at 7.

To challenge his conviction on the basis that his counsel was ineffective, Delossantos must satisfy a two-part test.  First, he must demonstrate that his counsel's performance "fell below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 687–88 (1984); see also United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008).  Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  A petitioner "bears the burden of proving that counsel's representation was unreasonable under the prevailing professional norms."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).  The reasonableness of counsel's performance is to be viewed from the perspective of counsel at the time, and

"the standard of review is highly deferential." Id. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Indeed, the Second Circuit has "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised." Tippens v. Walker, 77 F.3d 682, 686 (2d Cir. 1996).

    1. Mitigating Role Adjustment

Delossantos argues that defense counsel was ineffective because he failed to, but "could have easily argued under [U.S.S.G. §] 3B1.2 mitigating role, for a two [to] three level departure adjustment for Petitioner['s] participant role." Delossantos 2255 Mot. at 5–6. The government concedes that defense counsel did not argue for a mitigating role reduction, but argues that such an argument was not supported by the record. Gov't's Opp. at 7.

Delossantos does not dispute that three kilograms of cocaine was reasonably foreseeable to him with respect to his participation in the offenses charged.[2] See Plea Agreement (Doc. No. 94), United States v. Delossantos, No. 06-cr-264 (JCH), at 3–4 (noting that "the defendant and the Government have entered into a stipulation . . . that the Guidelines equivalent of 3 kilograms of cocaine was reasonably foreseeable to the defendant"); see also Change of Plea Tr. (Doc. No. 154), United States v. Delossantos, No. 06-cr-264 (JCH), at 38:12–21 (agreeing that "there are three kilograms of cocaine that are involved in your offense and that you reasonably understand were involved"). Delossantos also admits that he contacted a cooperating witness several times to

---

[2] The base offense level for three kilograms of cocaine is 28. U.S.S.G. § 2D1.1(c)(6) (setting base offense level at 28 for "[a]t least 2 KG but less than 3.5 KG of Cocaine"); Plea Agreement at 4 (stipulating a base offense level of 28).

6

arrange to meet with and provide him cocaine in that amount; that he subsequently met with that informant and caused cocaine in that amount to be delivered to him; and that he subsequently contacted the cooperating witness several times in an attempt to collect money owed for the three kilograms of cocaine.  See Change of Plea Tr. at 40:9–43:24.

Based on these facts, which evince Delossantos's extensive involvement in the conspiracy, the court concludes that it was not objectively unreasonable for trial counsel to decline to argue that Delossantos was a "minimal" or "minor" participant in the offenses charged.  See U.S.S.G. § 3B1.2.

2.  Obstruction of Justice and Acceptance of Responsibility Adjustments

Delossantos argues that defense counsel "failed to investigate, research and produce relevant facts to support a departure for 'extraordinary circumstances' for acceptance of responsibility," notwithstanding the court's obstruction of justice enhancement. Delossantos 2255 Mot. at 6 (quoting United States v. Brown, 321 F.3d 347 (2d Cir. 2003)).  The Government argues that the court's non-Guidelines sentence "in effect[ ] gave the defendant the benefit of the acceptance reduction" and "negated the obstruction enhancement."  Gov't's Opp. at 8.[3]

This court disagrees with Delossantos's assessment of defense counsel's efforts. The record shows that defense counsel argued extensively for an acceptance of responsibility reduction, submitting a memorandum on the issue and arguing that Delossantos deserved a reduction based on his extraordinary cooperation and the relative sentences his co-defendants received in the absence of their cooperation.  See

---

[3] The Government also argues that the court actually did award Delossantos a three-level reduction for acceptance, see Gov't's Opp. at 8, but that claim is belied by the record, see Change of Plea Tr. at 38:17–18, 54:23–55:2.

Change of Plea Tr. at 17:16–19:24; Delossantos Sentencing Memorandum (Doc. No. 165) at 8–11 (arguing for three-level downward adjustment for acceptance of responsibility due to "extraordinary circumstances" warranting reduction). Even though the court ultimately did not grant the reduction, there is no evidence that defense counsel's efforts on this issue fell below an objective standard of reasonableness.

Defense counsel also argued extensively against the application of the obstruction of justice enhancement in a sentencing memorandum and at the sentencing hearing, including by citing case law from the Second and Eighth Circuits. See Sentencing Tr. at 6:5–16:25; Delossantos Sentencing Memorandum (Doc. No. 165) at 5–6 (arguing that obstruction enhancement was inappropriate because Delossantos lacked specific intent to obstruct and because Delossantos fled based on fear for his own safety). The fact that Delossantos's counsel failed to prevail on his position regarding the obstruction enhancement does not mean that he was ineffective.

Accordingly, the court concludes that defense counsel did not provide ineffective assistance with respect to the acceptance of responsibility and obstruction of justice adjustments.

3. Investigation of Mental Condition and Family History

Delossantos argues that defense counsel was ineffective because he failed "to make a reasonable investigation into [Delossantos's] psychiatric history and family background, and to present sufficient mitigating evidence to the Court at sentencing." Delossantos 2255 Mot. at 8. The Government argues that "nothing in the record or in the remarks or behavior of the defendant before the Court" suggests that defense counsel should have made such an investigation.

The court agrees with the Government. The Presentence Report, which was filed by the U.S. probation officer before the sentencing hearing, stated that Delossantos was in good physical health, that he did not take any prescription or over-the-counter medication, that he had never used illicit substances or been treated for substance abuse, and that he "disclaimed having any history of mental illness and/or treatment." Delossantos Presentence Report (Doc. No. 157), United States v. Delossantos, No. 06-cr-264 (JCH), ¶¶ 50–53. Moreover, this court's review of Delossantos's responses to questions at his change of plea and sentencing hearings do not reveal that Delossantos suffered from mental health problems or family issues. For example, Delossantos testified that he had never been treated for a mental illness or emotional disturbance. Change of Plea Tr. at 26:24–25. Moreover, Delossantos does not appear to even claim that he suffers from mental illness: he simply alleges that witnesses would have been able to testify as to his "fear[,] which would have given the Court some indication as to his state of mind." Delossantos 2255 Mot. at 8. In sum, the record does not indicate that defense counsel's decision to not investigate further into Delossantos's mental condition or family background "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687–88.

    4. Knowing and Voluntary Plea

Delossantos also claims that his "guilty plea was involuntarily and unknowingly made due to the ineffective assistance of [c]ounsel." Delossantos 2255 Mot. at 9. Notably, he fails to specify what exactly rendered his guilty plea involuntary and unknowing. Regardless, this claim fails.[4]

---

[4] Within this section, Delossantos makes the unrelated claim that counsel was ineffective in preparing for sentencing by failing to consult with Delossantos regarding the Presentence Report and

First, any events that occurred prior to the guilty plea do not render his plea involuntary and unknowing.  "'A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events that occurred prior to the entry of the guilty plea." Parisi, 529 F.3d at 138 (quoting United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996)).  "'A guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" Tate v. United States, No. 07-cv-1522 (RNC), 2009 WL 1011337, *2 (D. Conn. Apr. 15, 2009) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)).  Accordingly, when a petitioner has entered a guilty plea, "the petitioner must show that the plea agreement was not knowing and voluntary," and a claim of ineffective assistance of counsel must challenge "the constitutionality of the *process* by which the defendant pleaded guilty." Parisi, 529 F.3d at 138 (internal citations and quotation marks omitted) (emphasis in original); see also United States v. Torres, 129 F.3d 710, 715–16 (2d Cir. 1997) (declining to address on appeal defendant's claim that counsel was ineffective at pretrial suppression hearing, because such allegations did not relate to voluntary and knowing character of guilty plea); Coffin, 76 F.3d at 497–98 (finding that defendant's guilty plea effectively waived ineffective assistance of counsel claims relating to events occurring

---

possible defenses.  Delossantos 2255 Mot. at 9.  This claim is belied by the record at sentencing.  See Sentencing Tr. at 3:25–4:12 (defense counsel representing that he engaged in "three very lengthy sessions with Mr. Delossantos," during which they discussed "every aspect" of the Presentence Report), 4:21–5:6 ("THE COURT:  Did you listen to what counsel just said about his conversations with you and the fact he conveyed to you what's in the [presentence] report and discuss[ed] it with you . . . ?  Do you agree with that, sir?  THE DEFENDANT:  Yes.  THE COURT:  All right.  Have you had enough time to talk with counsel before today's proceeding about the sentencing?  THE DEFENDANT:  Yes.").

10

prior to guilty plea).[5]

Second, the plea process itself shows that the court engaged in a comprehensive plea colloquy with Delossantos and that Delossantos signed a plea agreement and knowingly and voluntarily pled guilty. See Change of Plea Tr. at 5:23–46:11 (colloquy), 47:4–16 (guilty plea). Specifically, right before pleading guilty, Delossantos affirmed that no one was coercing him into pleading guilty; that no one made any promises to him about his sentence; that he was pleading guilty voluntarily and of his own freewill because he was guilty "and for no other reason"; that he was aware of the consequences of pleading guilty; and that he had no other concerns about pleading guilty. See id. at 44:7–45:3. The court also advised Delossantos of the possible sentence he could receive for the counts for which he planned to plead guilty. Id. at 27:7–28:24 (notifying Delossantos that the maximum penalty for both Counts of the Indictment is 80 years of imprisonment); see Shah v. United States, No. 12 Civ. 6366 (WHP), 2013 WL 1641167, *4 (S.D.N.Y. Apr. 16, 2013) ("When a petitioner claims his counsel 'mislead him as to the possible sentence which might result from [his] plea,' he cannot overcome Strickland's prejudice prong if he was made aware of 'the actual sentencing possibilities' and entered into the plea agreement anyway.").

After Delossantos pled guilty, the court found that, on the basis of Delossantos's

---

[5] To the extent that Delossantos argues that counsel failed to adequately advise him of the sentence he might receive, such an argument cannot stand. "When a petitioner claims his counsel 'mislead him as to the possible sentence which might result from [his] plea,' he cannot overcome Strickland's prejudice prong if he was made aware of 'the actual sentencing possibilities' and entered into the plea agreement anyway." Shah v. United States, No. 12 Civ. 6366 (WHP), 2013 WL 1641167, *4 (S.D.N.Y. Apr. 16, 2013).

Here, the court advised Delossantos of the actual sentencing possibilities he could receive for the counts for which he planned to plead guilty. Change of Plea Tr. at 27:7–28:24 (notifying Delossantos that the maximum penalty for both Counts of the Indictment is 80 years of imprisonment).

answers, the stipulation of the parties, and the parties' remarks, that Delossantos was "fully competent and capable of entering an informed plea," and that he acted "voluntarily, knowingly and of his own freewill." Change of Plea Tr. at 47:17–48:12.

Based on the above, the court concludes that the evidence does not support Delossantos's claim that his guilty plea was involuntarily and unknowingly made, or that defense counsel was ineffective on this issue.

B. District Court's Findings

In addition to his claim of ineffective assistance of counsel, Delossantos also argues that the court made several errors at sentencing. Delossantos does not appear to have raised these issues on direct appeal, and his failure to do so means that the claims have been procedurally defaulted.[6] "Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either cause and actual prejudice, or that he is actually innocent." Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012) (citations and internal quotation marks omitted); see Reed v. Farley, 512 U.S. 339, 358 (1994) (stating that procedurally defaulted claims "will not be heard . . . absent a showing of cause and actual prejudice"). Delossantos has not argued in his Motion that cause existed or that actual prejudice resulted. See Delossantos 2255 Mot. at 10–20. Accordingly, the claims are waived.

Even if the claims were not waived, however, they are without merit.

---

[6] On direct appeal, Delossantos did raise the issue of whether the sentencing court erred in applying a two-level enhancement for obstruction of justice. See Doc. No. 5 at 19. The Second Circuit affirmed the sentencing court's decision by summary order. See id. at 56–59. Thus, to the extent that his arguments in this Motion repeat the ones made on direct appeal, they are not cognizable here. See Reed v. Farley, 512 U.S. 339, 358 (1994) ("[C]laims will ordinarily not be entertained under § 2255 that have already been rejected on direct review.").

Delossantos has failed to show that, with respect to any of those claims, there was a "fundamental error of fact that would render [his] sentencing proceeding so irregular and invalid that relief under § 2255 would be appropriate." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (vacating judgment reducing defendant's sentence under Fed. R. Crim. P. 35).

      1. Lack of Hearing on Obstruction Issue

Delossantos argues that the court "improperly applied a two-level enhancement for obstruction of justice . . . without first conducting a hearing." Delossantos 2255 Mot. at 10. Delossantos argues that a hearing was necessary to determine whether specific intent existed and whether Delossantos was in fear for his safety. Id.

First, Delossantos does not cite case law stating that a court must, as a matter of law, conduct a hearing before making findings that would permit an obstruction of justice enhancement. Second, contrary to Delossantos's claim, the court did hear extensive arguments from counsel on the obstruction of justice issue. See Sentencing Tr. at 6:2–16:25. In fact, the court noted during that argument that it was likely true that Delossantos feared for his safety. See id. at 15:17–18 ("I don't mean to diminish [Delossantos's] concern that he was fearful. I think that anybody that cooperates has to be fearful."). However, the court also considered evidence that tended to support a finding of obstruction of justice, notwithstanding Delossantos's fear. For example, the court noted that Delossantos fled "right in advance of" his sentencing date, which suggested that his flight derived from a desire to "avoid the sentencing date." Id. at 15:9–17. Third, prior to the sentencing, the court received and considered sentencing memoranda by counsel for both parties in which the obstruction of justice issue was

13

discussed. See Delossantos Sentencing Memorandum at 5–6; Gov't's Sentencing Memorandum (Doc. No. 166) at 4–5. Based on the record, the court concludes that the its decision at sentencing to apply the obstruction of justice enhancement without an evidentiary hearing was not an error of law that constituted a fundamental defect that resulted in a complete miscarriage of justice. See Napoli, 32 F.3d at 35.

    2. Safety Valve and Acceptance of Responsibility

Delossantos claims that the court erred at sentencing by failing to apply a two-level safety-valve reduction and a two- to three-level reduction for acceptance of responsibility. See Delossantos 2255 Mot. at 16. However, the court did apply the two-level safety-valve reduction when calculating Delossantos's adjusted offense level. See Sentencing Tr. at 32:12–19 (applying two-level safety-valve reduction).

With respect to the acceptance of responsibility issue, this court has discussed previously how defense counsel argued that this was an "extraordinary circumstance" justifying a reduction for acceptance and that the court ultimately decided not to apply that reduction at sentencing. See, supra, Part III.A.2. At sentencing, the court stated that it considered Delossantos's cooperation when deciding whether or not to grant him a reduction for acceptance of responsibility. See Sentencing Tr. at 17:16–18:10.

Here, Delossantos provides no additional evidence that would give this court a reason to reconsider that decision, nor does he argue how the court failed to consider the evidence and arguments before it in rendering its decision. He simply claims that he is entitled to a reduction. See Delossantos 2255 Mot. at 14–16. The court concludes that Delossantos has not shown that the court commited an error of law that resulted in a complete miscarriage of justice when it declined to apply an acceptance of

responsibility reduction.

### 3. Effect of Plea Agreement on the Court

Finally, Delossantos argues that the court violated the terms of the plea agreement by "fail[ing] to follow the sentencing recommendations set forth in the plea agreement." See Delossantos 2255 Mot. at 17. However, the plea agreement states specifically that the court is not bound by the agreement. See Plea Agreement at 4 ("The defendant expressly understands that this stipulation and agreement are not binding on the Court."). At the change of plea hearing, the court took care to ensure that Delossantos was aware that it was not bound by the agreement and that it would be making its own judgment as to what sentence to impose on Delossantos. Change of Plea Tr. at 36:19–22 (affirming understanding that the court is not bound by the plea agreement and must make its own judgment). Accordingly, the court could not have violated the terms of the plea agreement, because it was not bound by them.

## IV. CONCLUSION

For the foregoing reasons, the court **DENIES** Delossantos's Motion to Vacate, Set Aside or Correct Sentence (Doc. No. 1). Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, any appeal from this order would not be taken in good faith and a certificate of appealability shall not issue. The Clerk is directed to close the case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 26th day of June, 2013.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge